Argued at Pendleton November 1, affirmed November 22, 1927.

## C. E. CRIPE v. C. F. WADE.

(261 Pac. 72.)

**Sales—Representations as to Value of Merchandise, Inspected by Experienced Buyer of Interest in Business, Held Only Expression of Opinion, not Warranting Cancellation of Note for Fraud.**

1. Representations by seller of interest in mercantile business as to value of stock of merchandise, inspected by buyer, who knew, or should have known, from experience its value, amounted only to expression of opinion, not warranting cancellation of purchase-money note for fraud.

**Sales—Buyer, Examining Seller's Books and Accounts, and Informed Generally of His Indebtedness, Held not Entitled to Cancellation of Note for Interest in Business for Fraudulent Representation of Indebtedness.**

2. Buyer, making cursory examination of seller's books and outstanding accounts, and informed in general way of extent of seller's indebtedness before purchasing interest in stock of merchandise, *held* not entitled to cancellation of purchase-money note on ground of fraudulent representation as to indebtedness.

---

1. See 24 R. C. L. 338.

Sales—Buyer, Seeking Cancellation of Note for Fraud, must Restore, or Offer to Restore, What He Received.

3. Buyer, seeking cancellation of purchase-money note for fraud, must place seller *in statu quo* by restoring, or offering to restore, what he received under contract.

Sales—Evidence Held to Show That Sale was Consummated as Required Before Purchase-money Note was Delivered to Seller by Bank.

4. In action on purchase-money note, placed with bank with instructions to deliver it to seller only on consummation of deal after buyer had opportunity to ascertain truth of seller's representations, evidence *held* to show that deal had been consummated at buyer's satisfaction at time of delivery of note to seller.

Corporations—Note for Stock in Corporation With Assets Exceeding Liabilities Held not Void for Failure of Consideration.

5. Note for price of stock, which cost seller over $2,000, in corporation with assets exceeding its liabilities by $600, *held* not void for failure of consideration, though stock was not worth amount represented by seller; it having some value.

Appeal and Error—Supreme Court is not Concerned With Weight of Testimony, but Only With Question Whether There is Any Evidence Supporting Judgment, When Equity has No Jurisdiction.

6. If equity has jurisdiction of cause, it should be tried *de novo* on appeal, but, if not, Supreme Court is not concerned with weight of testimony, but only with question whether there is any evidence to support judgment rendered.

Cancellation of Instruments — Ordinarily Negotiable Instrument Fraudulently Obtained may be Canceled, Especially if Likely to Come into Innocent Holder's Hands Before Maturity, or Owner Delays Long Before Suing.

7. Ordinarily, equity may be invoked to cancel a negotiable instrument obtained through fraud, especially when there is danger of its coming into the hands of an innocent holder before maturity, or owner delays long before bringing action, thereby making it difficult to obtain evidence of fraud.

Jury—One Suing on Note is Entitled to Trial by Jury, Unless There is Good Reason for Transfer to Equity.

8. One suing for amount due on note has constitutional right to trial by jury, unless there is well-grounded reason for changing forum to equity.

---

3. See 4 R. C. L. 511.
7. See 4 R. C. L. 494.

Bills and Notes—Past-due Note is Subject, in Subsequent Purchaser's
   Hands, to All Equities and Defenses Available Against Payee.

9.   A past-due note is subject to all the equities and defenses in
hands of subsequent purchaser that might be considered as against
payee.

Cancellation of Instruments—Buyer Held not Entitled to Cancella-
   tion of Note Sued on for Fraud, Conditional Delivery, or Failure
   of Consideration; Such Defenses Being Available in Law Action.

10.   Buyer *held* not entitled to cancellation of purchase-money
note sued on for fraud, conditional delivery, or failure of consider-
ation, all such defenses being available in law action, and adjudica-
tion of either a bar to recovery by assignee of note.

Appeal and Error—Trial Court's Fact Findings on Contradictory
   Evidence in Law Action cannot be Reviewed, Being Equivalent
   to Jury's Verdict.

11.   Trial court's finding on questions of fact, as to which evi-
dence is contradictory, in law action, cannot be reviewed, being
equivalent to verdict of jury.

Appeal and Error, 4 C. J., p. 726, n. 17, p. 876, n. 78, p. 883,
n. 33, p. 887, n. 59, p. 897, n. 81.
Bills and Notes, 8 C. J., p. 739, n. 84, p. 744, n. 36, p. 747, n. 48,
49, p. 780, n. 34.
Cancellation of Instruments, 9 C. J., p. 1193, n. 68, 76, p. 1207,
n. 32, p. 1209, n. 36.
Fraud, 26 C. J., p. 1215, n. 84, p. 1216, n. 85.
Juries, 35 C. J., p. 153, n. 65, p. 176, n. 41.
Sales, 35 Cyc., p. 71, n. 49.
Witnesses, 40 Cyc., p. 2586, n. 51.

From Gilliam: D. R. PARKER, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the name of
*Mr. D. N. Mackay,* with an oral argument by *Mr.
Herbert Cooke.*

For respondent there was a brief over the names
of *Mr. J. D. Weed* and *Messrs. Angell, Fisher &
Sabin,* with an oral argument by *Mr. R. L. Sabin, Jr.*

123 Or.—8

BELT, J.—This is an action upon a promissory note. Three defenses were interposed: (1) fraud, (2) conditional delivery, (3) failure of consideration. Defendant alleged that he had no plain, adequate and complete remedy at law and prayed for a decree that the note be delivered into court and canceled as null and void. Upon stipulation, the cause was submitted to the court without a jury. Judgment was rendered in favor of plaintiff for the amount due on the note and for attorney's fees. Defendant appeals.

This note was given in payment for the one-half interest which plaintiff owned in a mercantile business located at La Grove, Gilliam County, Oregon. Defendant avers that he was caused to execute the note by reason of certain alleged false and fraudulent representations made by plaintiff concerning the value of the stock of merchandise and the existing indebtedness of the business. After the sale was consummated, defendant and McCaughey continued in the operation of the business and the former was elected president of the corporation.

1. Relative to the issue of fraud, the record discloses:

"Q. Mr. Wade, how long have you been in the general mechandise business as a merchant? A. Twelve years for myself.

"Q. Prior to that time were you in the merchandise business? A. Oh yes I was in the merchandise business.

"Q. During that time were you in and about stock and goods of the same nature and description that was contained in the business of the La Grove Mercantile Company? A. Yes.

"Q. And are you generally familiar with the values of goods on the shelf of that nature? A. Yes.

"Q. Are you, by the experience you have had, familiar with the general values of store fixtures and items of that sort? A. Yes.

"Q. Do you think you are competent from your experience to say what was the value, or probable value, of the building in which this merchandise and these fixtures were contained? A. Yes."

In view of this testimony it is difficult to understand how Wade could have been misled or deceived relative to the value of the stock of merchandise. He inspected the property and knew, or ought to have known, the value of it. The representations as to value, if made, amounted, under the circumstances, only to an expression of opinion: *Ward* v. *Jenson,* 87 Or. 314 (170 Pac. 538); *McCabe* v. *Kelleher,* 90 Or. 45 (175 Pac. 608); *Bell* v. *Spain,* 110 Or. 114 (222 Pac. 322, 223 Pac. 235).

2. Relative to the alleged representation as to indebtedness, we think the evidence greatly preponderates against the defendant in that respect. He not only examined the stock of merchandise but also made a cursory examination of the books and outstanding accounts of the business. After being informed in a general way as to the extent of indebtedness, he agreed to purchase plaintiff's interest for $2,000.

3. If defendant was defrauded and seeks a cancellation of the note, he must do equity by restoring, or offering to restore, that which he received by virtue of his contract. It is a condition precedent, when seeking cancellation of an instrument on the ground of fraud, that the other party be placed *in statu quo:* *Davis* v. *Mitchell,* 72 Or. 165 (142 Pac. 788); 4 R. C. L. 511; 9 C. J. 1207. This defendant has failed to do. We may, therefore, eliminate from our consideration the issue of fraud.

4. It is contended by the defendant that the note, with the knowledge and consent of plaintiff, was placed with the Arlington National Bank with instructions to the cashier that it be delivered to the plaintiff only upon the consummation of the deal and after defendant had been afforded an opportunity to ascertain the truth of the representations made to him relative to the status of the business. It is asserted that the plaintiff obtained possession of the note from the bank by falsely representing to the cashier, Mr. Cox, that the transaction had been closed and that Wade was satisfied. The plaintiff thus explains how he came into possession of the note:

"Mr. Cox he got up and went right over to the back end of the office and called up Mr. Wade and said 'Cripe is down here wanting his note.' I don't know what Wade told him but he came back and got the note out of a little book * * and gave it to me * * ."

Mr. Cox, in response to the question: "Just what was that conversation Mr. Cox that you had with Mr. Wade?" testified:

"I told him that Mr. Cripe and Mr. McCaughey were there and were asking for the stock and the note and I am pretty sure that I mentioned to him that they had stated to me that they had had a conversation with him and I think both of them explained to me that this arrangement was agreeable to Mr. Wade. Mr. Wade demurred at first, said he didn't know about it but said it would be all right. He guessed it would be all right for them to take up the stock and the note and bring it out."

We are convinced that, at the time of the delivery of this note to the plaintiff, the deal had been consummated to the satisfaction of the defendant and that the bank did not violate its instructions.

5. There is absolutely no merit in the contention that there is a failure of consideration for the note. Unquestionably it was given in payment for the amount of stock plaintiff owned in the La Grove Mercantile Company. A certificate of the stock was delivered to defendant and he was thereafter elected president of the company. Later he indorsed the stock certificate in blank and deposited it with the bank as collateral security. Notwithstanding this documentary evidence, Wade emphatically denied that he ever came into possession of the stock. We recall the statutory rule: "A witness false in one part of his testimony is to be distrusted in others." Conceding that the stock did not have the value represented by plaintiff, this would not amount to a failure of consideration. Unquestionably it had some value. It cost plaintiff over $2,000. According to defendant's own testimony the assets of the company exceeded its liabilities by $600.

6–11. Did equity have jurisdiction of this cause? If so, it should be tried *de novo* here. If not, then we are not concerned with the weight of the testimony, but only with the question as to whether there is any evidence to support the judgment rendered. We are of opinion that defendant had a full, complete and adequate remedy at law. There were no special circumstances alleged nor proven to invoke equitable jurisdiction. Ordinarily, equity may be invoked to cancel a negotiable instrument obtained through fraud. Especially is this true when there is danger of the note before maturity coming into the hands of an innocent holder or where the owner thereof delays long before bringing an action, thereby making it difficult to obtain evidence to establish the fraud. See cases in note to *Johnson* v. *Swanke,* 5 L. R. A.

1048. In the instant cause plaintiff is in court seeking to recover the amount due on the note, and is entitled to his constitutional right to trial by jury, unless there is a well-grounded reason for changing the forum to equity. There is no danger that the note may come into the hands of an innocent purchaser, for it is past due and subject to all the equities and defenses that might be considered as against the plaintiff. Furthermore, all of the defenses here interposed are available in a law action and, if either of them were established, such adjudication would be a bar to recovery by anyone to whom the note was assigned. We see no ground for equitable jurisdiction: *Cincinnati H. & D. R. Co.* v. *McKean,* 64 Fed. 36; *The Sailors* v. *Woelfle,* 118 Tenn. 755 (102 S. W. 1109, 12 L. R. A. (N. S.), 881); *Shain* v. *Belvin,* 79 Cal. 262 (21 Pac. 747); *Lewis* v. *Tobias,* 10 Cal. 574; *Fuller* v. *Percival* (Second Suit), 126 Mass. 381; Black on Rescission and Cancellation, § 405; Pomeroy's Eq. Jurisprudence (4 ed.), § 2107; 9 C. J. 1193. If our conclusion in this respect is correct, it follows that, since the evidence is contradictory, the finding of the trial court on questions of fact in a law action cannot be reviewed. Its findings are equivalent to the verdict of a jury.

Assuming, however, that the case should be heard here *de novo,* we believe the evidence greatly preponderates in favor of the plaintiff. We see no merit in this appeal.

The judgment of the lower court is affirmed.

AFFIRMED.