Submitted on briefs March 3; affirmed March 17, 1942

## JOHNSON *v.* DAVIDSON ET AL.

(123 P. (2d) 179)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Guy O. Smith,* and *A. E. Schirman,* both of Salem, for appellant.

*Ronald C. Glover, Walter S. Lamkin,* and *Carson & Carson,* all of Salem, for respondent.

BELT, J. Plaintiff, on December 4, 1939, commenced an action to recover on a promissory note dated April 7, 1932, in the sum of $2,278.77, executed by the defendants in favor of Claude A. Johnson. The note was payable in monthly instalments, each in the sum of $40, commencing on May 7, 1932. No part of the note has been paid except monthly instalments on the principal aggregating $412.58, and the sum of $20 in accrued interest paid on October 3, 1934. The payee, Claude A. Johnson, died intestate November 5, 1933, and the administrator of his estate endorsed the note to plaintiff who is now the owner and holder thereof.

Defendant Roy E. Davidson in his answer alleged in substance that the above note and a mortgage of even date given as security therefor were executed by him and his then wife Myrtle E. Davidson as part payment of the purchase price on a 12-acre tract of land owned by Claude A. Johnson. It is charged by Davidson that the execution of the note and mortgage were procured through fraudulent representations of Johnson concerning the land. Although the note was past due, defendant alleged that the plaintiff might transfer it and the mortgage to his prejudice and that he had no adequate remedy at law. Defendant prayed for a decree canceling the note and mortgage and for a dismissal of the action. The defendant Myrtle E. Davidson defaulted and made no appearance.

The circuit court entered a "decree" that plaintiff recover of defendants the sum of $2,631.54, together with interest thereon, and the sum of $250 as attorneys' fees. Defendant Roy E. Davidson appeals.

■■ Since the note was past due and the plaintiff had waived his mortgage security by bringing an action

on the note, we think defendant had a complete and adequate remedy at law and that there was no ground for equitable relief. *Cripe v. Wade*, 123 Or. 111, 261 P. 72; *Johnson v. Curl*, 147 Or. 530, 33 P. (2d) 237, 34 P. (2d) 975. However, the cause was tried without objection as a suit in equity and it will be so considered here. *United Brokers Co. v. Dose*, 143 Or. 283, 22 P. (2d) 204; *Dant & Russell, Inc., v. Pierce*, 122 Or. 337, 255 P. 603; *Jones v. Waring*, 101 Or. 403, 200 P. 908.

■ The sole question is whether the defendants were induced through fraud to execute the note. The burden on this issue of fact rests upon the defendant. The trial judge made no findings of fact but the decree rendered necessarily implies that the charge of fraud was not sustained.

■ The land which Johnson conveyed to defendants was located about three miles southwest of the city of Salem. It was encumbered by a first mortgage in the sum of $2,000. As a part of the purchase price and in addition to the note and mortgage of $2,278.77, the defendants conveyed to Johnson all their right, title and interest in a contract of purchase covering certain real property in Salem. Defendant Davidson asserts that his equity in the Salem property was between $1,250 and $1,500. In the transaction involved herein, defendants assumed the first mortgage of $2,000, executed their note and mortgage for $2,278.77, and conveyed their equity as above stated, thereby establishing the purchase price of the Johnson land at approximately $5,778.

Defendants alleged that they were induced to purchase the real property on account of the representations of the vendor to them that:

"There were two good perpetual wells of water upon said property;

"The prune orchard growing upon said premises had and would normally yield from 10 to 15 tons of fruit annually after the same had been dried;

"Said prune orchard was in good condition and all of the trees were healthy and thrifty and capable of bearing, and had been well kept;

"The prune dryer upon said premises was in good workable condition and especially suitable for drying prunes;

"There was sufficient income therefrom each year from outside or neighborhood drying to pay for the drying of all of the prunes raised upon said premises;

"There was an excellent garden space upon said property, which particular plot was pointed out to the defendants, and that the soil of said plot was especially fertile and suitable for raising garden vegetables;

"Said property was decidedly valuable; that it had sold at one time for $12,500 and that the purchaser thereof had received the amount of said purchase price from the income from said property within two years from the time of the purchase thereof;

"The said premises at the time of said sale to the defendants were worth the sum of $9,000.00"

It is alleged that the above representations were false in that:

"* * * there were not two good perpetual wells of water upon said property, nor any good perpetual well of water thereon at all, for the water in one of said wells was unfit for human use, and the other frequently became dry and was without water, especially during the summer period of each year;

"* * * said prune orchard did not normally yield from 12 to 15 tons of prunes annually when dried, and would not, and did not yield more than 8 tons of dried prunes at any such time. The trees in said orchard were not healthy and thrifty nor had they been well kept, nor were they all in bearing condition and 207 of said trees were dead;

"* * * the prune dryer upon said property was not in good workable condition and the same could not

be satisfactorily used for drying prunes, nor was the same suitable for said purpose, neither could there be an income from outside or neighborhood drying sufficient to pay for the drying of the prunes produced upon said premises;

"* * * the garden spot so exhibited to the defendants was not suitable or fit for garden purposes. The soil of the same was not fertile but said soil was of an inferior quality and the same was infested with varmints, bugs and rodents that devoured garden seeds when planted before the same could grow or mature;

"* * * said property was not valuable premises nor had the same ever been sold for $12,500, neither had such sum been received as income from said property during any period of two years;

"* * * said land was not worth $9,000 when the same was sold to the defendants, nor any amount in excess of the amount of the first mortgage against the same, which was two thousand dollars."

In our opinion, fraud has not been established in this case. We think it was an afterthought. So far as the record discloses, there was no suggestion of fraud by defendants during the lifetime of the vendor. It was only after the latter's lips were sealed in death and the action was commenced to recover on the note that such charge was made. The real estate broker, Homer Foster, had also died prior to trial in the lower court, thereby depriving us of his version of the transaction.

The parties were dealing at arm's length. Neither Johnson nor Davidson were experienced in farming or fruit growing. Davidson had resided in Salem for many years and it is reasonable to assume that he was not entirely unaware of the economic hazards of growing prunes. Undoubtedly he knew as much about such business as did Johnson. Defendant Davidson inspected the premises twice before consummating the deal and there

is no evidence tending to show that anything was said or done to prevent him from obtaining full and complete knowledge of the premises.

Defendants took possession of the property soon after its purchase and made 21 monthly instalment payments on the purchase price—the last being on October 3, 1934. Defendant Davidson asserts that he learned about having been defrauded within a year after taking possession, yet he made no complaint and continued to make payments. Would such conduct be that of a person who honestly believed he had been cheated and defrauded?

The gravamen of defendant Davidson's complaint is that the property was not worth more than $2,000, the amount of the first mortgage; yet, on August 25, 1934, in his application for insurance he warranted as "true and correct" the statement that the two-story dwelling house had a valuation of $2,500; the barn, $1,000; and the land, $2,000. Insured further warranted that 10 acres "was under cultivation" and that the "kind of crop was prunes." On August 4, 1936, the prune dryer on the premises in question was insured in the sum of $500. If Davidson learned in 1933 that the vendor had greatly misrepresented the value of the property sold to him and he was deceived thereby, it is difficult to reconcile such knowledge with the statements made by him in his application for insurance.

We are inclined to think that the defendants made a bad bargain, as did many others who invested in prune orchards during such time, but we see no reasonable ground for their claim of fraud. The reports will not be encumbered by a detailed review of the evidence. The trial judge saw and heard the witnesses.

The decree is affirmed.