Argued September 23; affirmed December 30, 1948;
rehearing denied February 15, 1949

EDWARDS, Guardian, *v.* HOEVET

200 P. (2d) 955

*David Spiegel,* of Portland, argued the cause for appellant. On the brief were Lenske, Spiegel & Spiegel, of Portland.

*J. S. Middleton,* of Portland, argued the cause for respondent C. R. Hoevet. With him on the brief were Beach, Simon & Greene, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY, BRAND and HAY, Justices.

ROSSMAN, C. J.

This is an appeal by the plaintiff from a judgment which the circuit court entered in favor of the defendant after it had sustained a motion made by the defendant for the entry of judgment in his favor notwithstanding the return by the jury of a verdict in favor of the plaintiff. The motion of the defendant and the order entered by the court were pursuant to the practice authorized by 1945 Oregon Laws, chapter 149. The order which sustained the motion and entered judgment for the defendant also awarded a new trial.

It is clear that the appellant's cause of action, as stated in her complaint, is an account stated. Its amount is $10,350.00. The brief of her counsel says:

"Her cause of action is framed as an account stated. * * * Plaintiff's complaint stated a simple action in assumpsit framed as an account stated."

The appellant claims that the account was stated August 3, 1931. The respondent contends that no relationship of debtor and creditor existed between the appellant and the respondent when the purported stating of an account occurred and that, since an account stated can not create an original liability, the action of the parties of August 3, 1931, whatever it may have been, did not settle an account.

The appellant submits the following two assignments of error:

"The trial court erred in granting defendant his motion for a directed verdict and judgment notwithstanding the verdict of the jury, in granting a new trial, and in entering the judgment given herein pursuant to such motion."

"The court erred in permitting the introduction of parol evidence to vary the terms of the written agreement."

The following is a synopsis of the record. The appellant is the guardian of the persons and estates of three minor daughters of J. T. Edwards and wife. J. T. Edwards died May 24, 1930. His widow died a few years later. The complaint named as defendants C. R. Hoevet, John E. DuBois, Jr., and Westwood Lumber Company. Only Hoevet was served; he alone appeared in the circuit court and is the sole respondent. The Westwood Lumber Company is a corporation which owned and operated a sawmill at Wheeler. The mother of the aforementioned John E. DuBois, Jr., was the owner of all of the capital stock of the corporation. In 1924 the respondent, Hoevet, became the manager of the sawmill and vice-president of the corporation. He owned none of the latter's stock. In 1928 the aforementioned J. T. Edwards and the respondent formed a partnership which engaged in the

logging business until its dissolution following Edwards' death in 1930. Shortly prior to Edwards' death the partnership sold to the Westwood Lumber Company a quantity of logs, and in consideration received six promissory notes signed by the purchaser in the amount of about $20,700.00. Three of the notes, having a total face value of slightly more than $10,-350.00, became the property of Edwards; the other three were given to the respondent. The three which became the property of Edwards are the genesis of this action. April 4, 1931, possibly incidental to the probating of Edwards' estate, the three notes which had been delivered to Edwards were cancelled and three new ones were issued to his widow, Margaret Edwards, as administratrix of her deceased husband's estate. At or about that time a small payment was made upon principal, with the result that the total amount of the three notes was reduced to $10,350.00. By a succession of renewals the liability upon the notes has been continued.

To render understandable the manner in which the appellant claims that the account upon the notes was stated August 3, 1931, it is necessary to describe briefly two other transactions. In 1930, or the early part of 1931, the respondent and the aforementioned John E. DuBois, Jr., to whom we shall refer as Dubois, entered into a contract with the receivers of an insolvent concern entitled Oregon Logging & Timber Company whereby the two first mentioned agreed to purchase from the receivers a large tract of timberland which lay in the vicinity of the Westwood Lumber Company's mill. The contract price was $2.00 per thousand board feet of timber. It was anticipated the total sum payable would aggregate about $400,000.00. The two buyers paid upon the purchase price about $100,000.00. April

9, 1931, the two just mentioned entered into a contract with a corporation entitled Brix Logging Company whereby that concern agreed to log the tract and pay the respondent and DuBois $3.00 per thousand feet for the logs. Since that contract required the Brix Logging Company to proceed at once with the extensive logging operations, the respondent and DuBois were assured that the timber would be converted into cash.

The Brix Logging Company was a responsible, successful concern and partly as a result of that fact the contracts held by the respondent and DuBois were deemed valuable. The respondent expected that performance of the contract by the Brix Logging Company would yield a profit of $200,000.00 for himself and DuBois. After the Brix Company had signed the contract it spent $100,000.00 in building a logging camp and constructing other facilities preparatory to the performance of its undertaking.

When the aforementioned contracts were signed, the Westwood Lumber Company was in an impaired financial condition and the respondent felt that he was partially liable for debts due to two attorneys, Mr. George P. Winslow and Mr. C. W. Barrick, who had performed professional services incidental to the consummation of the contract for purchase of the timberlands of the Oregon Logging & Timber Company. The amount due to each attorney was $4,150.00. After the Brix contract was signed, Mr. Winslow urged that his account should be paid or that its payment should be secured. A creditor of the Westwood Lumber Company by the name of W. J. Riechers, to whom $62,-699.28 was payable, also felt insecure and was pressing his account for payment about the time when the Brix contract was signed.

Riechers and Winslow believed that the Brix logging contract was an asset which should be assigned to secure the payment of the sums due them. Under its requirements about $600,000.00 would become payable to the respondent and DuBois. The respondent realized that if a creditor, through legal action taken for the enforcement of his claim, interferred with the performance of either the timber purchase contract or the logging contract, opportunity to realize the anticipated profit of $200,000.00 might vanish.

About the middle of 1931 Mr. Winslow and Mr. Riechers urged the respondent to assign the Brix contract to a trustee so that the sums to be paid by the Brix Company would be employed for the discharge of their accounts. August 3, 1931, Winslow, Riechers, Barrick and the respondent conferred. Barrick, in addition to being a member of the bar, was the secretary of the Westwood Lumber Company. At that time the respondent, and DuBois possessed as valuable assets (1) the contract which enabled them to purchase the timber of the Oregon Logging & Timber Company at $2.00 per thousand board feet, and (2) the other contract whereby the Brix Logging Company promised to buy the timber just mentioned at a price of $3.00 per thousand feet. The Brix contract required the Brix Logging Company to log, in addition to the property of the Oregon Logging & Timber Company, a tract of 1440 acres owned by the Westwood Lumber Company.

As a result of the conference held August 3, 1931, a written instrument was prepared and signed on that day which assigned the Brix contract to Barrick to secure payment of the sums due Winslow, Riechers, the Edwards Estate and himself. Most of that document is quoted in *Hoevet v. Westwood Lumber Company*, 170 Or. 423, 134 P. 2d 738. The appellant depends

upon it to establish her contention that the amounts due her upon the three promissory notes became an account stated. No one who represented the Edwards Estate had any information that a conference would be held August 3 or thereabouts for the purpose of securing the creditors of Westwood Lumber Company, and no representative of the estate attended the conference. The first intimation of what occurred August 3 came to Mrs. J. T. Edwards, administratrix of her deceased husband's estate, about a week or more after August 3. The instrument of assignment was signed by Westwood Lumber Company, DuBois and the respondent. All three signatures were written by the respondent. His authority to sign the signatures of DuBois and the Westwood Lumber Company is unquestioned. The necessity for DuBois' signature to the instrument is self-evident. The necessity for the corporation's signature to the assignment arose from a fact which we have already mentioned; that is, the provision in the contract of the Brix Logging Company which imposed upon that concern the duty to log not only the timberland which the respondent and DuBois were purchasing from the insolvent Oregon Logging & Timber Company, but also 1440 acres owned by the Westwood Lumber Company.

The instrument of August 3, 1931, was primarily an assignment: *Hoevet v. Westwood Lumber Company,* supra. Its opening paragraph stated:

"C. R. Hoevet, John E. DuBois, Jr., and the Westwood Lumber Company, a corporation, for and in consideration of the sum of $10.00 and other valuable consideration, to them paid, the receipt whereof is hereby acknowledged, do hereby bargain, sell, convey, transfer and assign unto C. W. Barrick, Trustee,".

the Brix contract, the timberland described in it and all moneys payable under it. The second paragraph subjected the assignment and the assignee's rights to those of the receivers of the Oregon Logging & Timber Company and to those of a mortgagee who held a mortgage upon the timber tract of the Westwood Lumber Company. The third paragraph follows:

"This assignment and transfer is made for the purpose of securing the payment of the sum of $82,349.28 with interest from this date at the rate of eight per cent per annum, which the grantors and assignors herein are owing various persons, to wit: W. J. Riechers $62,699.28, C. W. Barrick $4,150.00, Geo. P. Winslow $4,150.00 and the estate of J. T. Edwards $10,350.00, all of which the assignors hereby agree to pay on or before one year from this date, and upon full payment of said amounts this assignment and transfer shall become null and void."

The appellant depends especially upon the words just quoted beginning with "the estate of J. T. Edwards" and ending with "to pay" to establish her contentions. Other parts of the assignment declared:

"The Brix Logging Company is hereby authorized and directed to make all payments under the terms of said contract to the Trustee herein until the claim of said Trustee has been fully satisfied * * *.

"It is understood and agreed that John E. DuBois, Sr., of DuBois, Pennsylvania, is also primarily liable for the indebtedness to C. W. Barrick and Geo. P. Winslow hereinbefore mentioned, but it is understood that time of payment for said obligation is extended to John E. DuBois the same as to the assignors herein mentioned. "* * *

"It is further understood and agreed by and between all the parties that in case interest upon the obligations owing to respective parties herein described is paid on or before the expiration of one year from this date, that time for the payment of the principal in said indebtedness will be further extended for a period of one additional year."

We have given the names of all who signed the instrument: DuBois, the respondent and Westwood Lumber Company. None of the creditors in whose behalf the assignment was executed was named as a party to it and none of them signed it.

Although the Brix Logging Company made the preparations which we have mentioned preliminary to performing its contract, its efforts failed. A forest fire, in addition to burning some of the timber, destroyed the logging camp. A revised contract, signed November 3, 1933, (see *Hoevet v. Westwood Lumber Co.*, supra,) was later abandoned.

The respondent in the uncontradicted testimony which we shall now quote accounted for the inclusion in the assignment instrument of the estate of J. T. Edwards. The occasion to which his testimony refers is the conference held on August 3, 1931, when the instrument was written and signed. He testified:

"Then when they had the things all ready, why, it took care of Riechers and Winslow and Barrick. 'Well,' I said, 'I won't agree to this here. There is a widow woman with three small children; I don't want to see her left out of this. As long as you fellows are being protected, I want her protected also.' And they said well, they had nothing to do with that. 'Well,' I said, 'I feel that she should be in this arrangement.' And they agreed to it. She wasn't there. She didn't know that this happened at all.

"Q. What was the reason in including Margaret Edwards?

"A. Well, I was a partner with Jack Edwards and I like him, and I liked the family, and I figured that she should have somebody looking after, protecting her interests.

"Q. You felt as long as the banker and Winslow and Barrick were securing some preference under these operations of the Brix Logging Company, that Mrs. Edwards should be included also?

"A. I did; I figured she should be in on it.

"Q. Now, at that time did you owe Mr. Riechers any sums of money yourself?

"A. Not a dollar, no.

"Q. Was there any transaction between you and Mr. Riechers pending at that time?

"A. No."

As we have said, the appellant contends that the aforementioned assignment instrument which the respondent, DuBois and Westwood Lumber Company signed August 3, 1931, stated the account upon the three promissory notes. It is her contention that that instrument not only stated the account, but also rendered the respondent liable to her for the amount represented by the notes. It must be borne in mind that the respondent was neither a maker nor an endorser of any of the notes. The maker of the notes and their sole obligor was Westwood Lumber Company. We have mentioned the fact that the respondent was not a stockholder in that corporation and, so far as we can ascertain from the record, his financial welfare was not related to that of the corporation except that his salary came from the corporation. There had never been a dispute or misunderstanding concerning the amount due upon the notes, and ever since April 6, 1931, when the written instrument signed by the re-

spondent and the widow of J. T. Edwards, as administratrix of his estate, settled the affairs of the partnership, there had been no claim that the respondent was indebted to the appellant.

We have mentioned the fact that the complaint states that plaintiff's cause of action as one for an account stated. Its material part follows:

"On or about August 3, 1931, an account was stated between the defendants as debtors and the estate of J. T. Edwards, deceased, as creditor, wherein and whereby it was agreed that defendants were indebted to the estate of J. T. Edwards in the sum of $10,350.00, with interest at the rate of 8% per annum, and defendants agreed to pay said sum of $10,350.00 with interest thereon at 8% per annum on August 3, 1932, to C. W. Barrick as trustee for said estate."

It will be observed that the complaint employs the term "an account was stated" and that all of the quoted words are suitable to the averment of an account stated. The complaint employs no language indicative of a purpose to enforce a promise made by a third party for the benefit of the plaintiff.

We shall now determine whether or not the above facts are capable of sustaining the charge of the complaint that the appellant and the respondent stated an account August 3, 1931.

■ Although the respondent was not liable upon the notes, the appellant contends that the accounting concerned the notes. Their amount was certain and unquestioned. We quote from *Murphy v. Oregon Engraving Co.*, 94 Or. 534, 186 P. 12:

"Neither is it proper to rest a stated account upon a liquidated demand already agreed upon and

which either party is bound to pay, as, for instance, a promissory note alone.''

From Williston on Contracts, Rev. Ed., § 1863, we take the following:

> ''The possibility of an account stated has likewise been denied where the prior indebtedness was on a negotiable instrument.''

Accordingly, the very inception of the purported stated account is foreign to the nature of such an obligation.

■ An account stated can not be the origin of a debt; a previous debtor-creditor relationship must exist between those who state an account. The theory of stated accounts introduced into the law of contracts a sort of stratification concept in which a debtor-creditor relationship is a sedimentary deposit underlying and supporting the superstructure consisting of the subsequently formed account stated. The latter is posterior to the formation of the debt. It comes into being after the parties, through a course of monetary transactions, have created a debt: *Steinmetz v. Grennon*, 106 Or. 625, 212 P. 532; *Vanbebber v. Plunkett*, 26 Or. 562, 38 P. 707, 27 L. R. A. 811; *Truman, Hooker & Co. v. Owens*, 17 Or. 523; Williston on Contracts, Rev. Ed., § 1862; and Restatement of the Law, Contracts, § 422. See also *State ex rel. Kaser v. Leonard*, 164 Or. 579, 94 P. 2d 1113, 102 P. 2d 197; *Munly v. Jones*, 130 Or. 252, 279 P. 630; *Meridianal Company v. Moeck*, 121 Or. 133, 253 P. 525; *Fleischner, Mayer & Co. v. Kubli*, 20 Or. 328, 25 P. 1086.

We found nothing in *Meyer v. Lowell*, 44 Mo. 328, cited by appellant, contrary to our analysis of the nature of an account stated. That decision was not concerned with a stated account, but with the rights of a

third party for whose benefit a paid-for promise was made to maintain action in his own name upon the promise.

■ There are at least four reasons why the circuit court was required to sustain the motion for the entry of judgment for the defendant notwithstanding the verdict: (1) the purported subject of the accounting was not an account but three promissory notes; (2) no relationship of debtor and creditor existed between the Edwards Estate and the respondent at the time when the purported settling of the account occurred; (3) no account of any kind existed between the respondent and the Edwards Estate August 3, 1931; and (4) on the day when the purported accounting is said to have taken place, that is, August 3, 1931, the supposed parties to it, that is, the respondent and the administratrix of the Edwards Estate, did not meet. We conclude that the averment concerning the purported stated account is unsupported by any evidence.

■■ The appellant's counsel, in preparing the reply brief, seemingly sensed the difficulties which confronted the theory of a stated account and bespeaks in the appellant's favor our consideration of any basis of recovery suggested by the terms of the assignment agreement. The reply brief submits as a possible theory "the promise to pay the debt of another for consideration." The quoted words possibly invite us to abandon the theory of a stated account, which was pursued in the circuit court, and sustain the verdict under a view that when the respondent signed the assignment agreement he thereby promised to pay all of the debts listed in that document, including the three notes held by the Edwards Estate. In other words, the suggested view is that the assignment agreement contains a promise made by the respondent, and supported

by a consideration, in which he undertook to discharge the notes which the appellant now holds.

This court is a court of review. We can not sustain verdicts and findings upon conceptions of the facts which the disfavored party never had an opportunity of contesting. A familiar rule of appellate practice restricts the appellant to the theory he pursued in the trial court. He can not in this court raise issues that he did not present and rely upon in the circuit court: *Johnson v. Davidson,* 168 Or. 379, 123 P. 2d 179; *Harlow v. Chenoweth,* 158 Or. 343, 75 P. 2d 937; *Pelton v. General Motors Acceptance Corp.,* 139 Or. 198, 9 P. 2d 128, 7 P. 2d 263. We deem it unnecessary to burden this page with additional citations from our reports; the rule just stated is universally applied: 4 C. J. S., Appeal and Error, § 241, page 465.

We have quoted the pertinent part of the complaint; it clearly shows that the appellant seeks recovery upon the theory of an account stated. We also quoted parts of the brief filed by her counsel which state expressly the theory she pursued in the trial court: an account stated. The trial judge instructed the jury:

"The plaintiff has filed a complaint in which * * * she says the defendant became obligated to her because of certain facts, upon what we call an account stated, in that on or about August 3, 1931, an account was stated between defendant and the estate of J. T. Edwards, deceased * * *.

"The defendant, C. R. Hoevet, who is the only defendant presently in the case, denies there was an account stated, * * *.

* * *

"You have heard frequent reference to 'account stated.' I instruct you that an account stated is an agreement * * *."

At that point there followed the rules governing an agreement for an account stated. The instructions were confined to the theory of an account stated. We are bound to assume that since the jury's verdict favored the appellant, it found that on August 3, 1931, the respondent and the Estate of J. T. Edwards stated an account. We are not permitted to infer that the jury found for the appellant upon some other theory.

Were we to depart from the theory upon which this cause was tried in the circuit court and reinstate the verdict, under a belief that the appellant was entitled to prevail as the party in whose favor the respondent made a promise, it may be that we would thereby deprive the respondent of defenses he would have interposed had the complaint been framed upon the embraced theory. For instance, it may be that to a complaint alleging a promise by the respondent to pay the appellant the notes of the Westwood Lumber Company he could successfully plead the statute of limitations. The instrument of assignment was executed August 3, 1931; the complaint was not filed until July 22, 1944. We, of course, do not know that a plea of the statute of limitations would be successful to a complaint framed upon the basis of a promise made to answer for the debt of another, and merely suggest the situation for the purpose of showing the wisdom which supports the rule restricting an appellant to the theory he presented in the trial court.

The foregoing disposes of all contentions submitted by the appellant in support of the first assignment of error. We believe that none of them possesses merit.

■ A previous page of this opinion quotes the second assignment of error. It is based upon an argument that error was committed when the trial court received

parol evidence showing the circumstances attendant upon the execution of the assignment instrument. That evidence was presented for the purpose of proving that the assignment document was not intended to exact of the respondent payment of the entire sum of $82,349.28, but only to subject the interests of the signers of that document in the Brix contract to payment of the aforementioned sum of $82,349.28. In view of the fact that the jury returned its verdict for the appellant, it is manifest that it rejected this evidence and accepted the appellant's view. A ruling, in order to warrant a reversal, must be not only erroneous but also prejudicial. The second assignment of error, in our opinion, must be rejected.

From the foregoing it follows that, according to our belief, the circuit court properly set aside the verdict of the jury and entered judgment for the respondent. However, in so doing, the court, upon its own motion, awarded a new trial. The trial judge said:

"The court feels that the jury was inadequately instructed with reference to account stated and that defendant's positions were not clearly and adequately presented to the jury so the jury had a grasp of the theory of the defense. * * * Because of this fact the errors suggested impress the court as being a denial of the fair trial to which the defendant was entitled."

It is apparent from those observations that the alert trial judge had in mind the problem with which *Varley v. Consolidated Timber Co.*, 172 Or. 157, 139 P. 2d 584, was concerned. When that decision was written the statute governing the entry of judgment notwithstanding the verdict was 1941 Oregon Laws, chapter 309. The 1945 legislative assembly, possibly prompted

by observations set forth in that decision, adopted 1945 Oregon Laws, chapter 149.

We believe that under the circumstances the award of a new trial should be deemed nothing more than a statement of the trial judge's appraisal of the record. It was entirely proper to make the award, but since the judgment, which was entered notwithstanding the verdict, must be affirmed, the award of the new trial becomes functus officio.

The challenged judgment is affirmed.