Argued June 6, affirmed November 22, petition for rehearing
denied December 19, 1967, United States Supreme Court
denied petition for certiorari May 27, 1968

## STATE OF OREGON, *Respondent, v.*
## LEE ROY HANSON, *Appellant.*
433 P. 2d 828

*Gerald H. Robinson,* Portland, argued the cause for appellant. With him on the briefs was Robert L. McKee, Portland.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

GOODWIN, J.

Defendant was indicted for first-degree murder and convicted of second-degree murder. He appeals.

One assignment of error challenges the receipt in evidence of statements made by Hanson to police officers while he was being transported from Seattle to Portland. He says that he was interrogated before he was advised of his rights. The police say that he was not.

Hanson had been arrested by Seattle police officers in response to a teletype message from the Multnomah County (Oregon) sheriff's office stating that Hanson was the last person seen with Sharon Ann Griffin, the murder victim, but that he was to be arrested and held pursuant to an outstanding warrant on a charge of felony nonsupport.

The Seattle arrest was made at gunpoint by two officers, one of whom testified that they informed

Hanson that he would be charged with homicide. At the police station, however, Hanson was told that he was being held for nonsupport. Hanson then asked why he had been picked up at gunpoint. The arresting officer testified that he again told Hanson he thought it was a homicide case. There was evidence that a Seattle detective thereupon showed Hanson the teletype from Multnomah County and that Hanson read the teletype message. The message contained the following language:

"* * * SUBJECT IS HUSKY VIOLENT TEMPER USE CAUTION IF APPREHENDED COULD BE ARMED AND DANGEROUS SUBJECT LAST SEEN IN PORTLAND 2:30 AM 2-9-65 IN ABOVE VEHICLE IN COMPANY OF SHARON ANN GRIFFIN WF [white female] 26 YRS WHOSE MURDERED BODY WAS FOUND 2-13-65 ON BORDER OF CLACKAMAS AND MULTNOMAH COUNTY LINE * * *."

The detective testified that after showing Hanson the teletype he advised Hanson of his rights and offered to let him use the phone to contact an attorney. Hanson, according to the officer, said he didn't need one because he had nothing to hide. Hanson has not based any claim of a denial of rights in this case on an assertion that he was indigent. His principal contention is that he was interrogated about the homicide without being advised of his rights. He says now that if he ever said he did not "need" a lawyer, a statement he denies, he thought he was wanted only for nonsupport. He swears he was unaware that he was a suspect in a murder case.

He argues that even if he was advised of his rights in a general way before he talked to the officers the advice was meaningless because he was put off

his guard when the officers told him that he was wanted for nonsupport, a charge he was apparently willing to concede. This, he argues, prevented him from making a knowing and intelligent waiver of his constitutional rights prior to questioning about murder. He cites *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

■ It is not necessary for us in this case to explore either the retroactive scope of the *Miranda* decision or its effect upon the law at the present time with reference to the amount of information the police must give a suspect before they may question him. At the time Hanson talked to the officers, the trial court found, he knew in fact that he was a suspect in a murder case. The evidence in the record amply supports that finding. His legal argument here is based upon a false factual assertion.

The controlling decision at the time of Hanson's arrest was *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964). The police were aware of that decision. The Seattle police testified at the trial that they informed Hanson of his right to remain silent and of his right to have an attorney. Hanson denied this testimony, but there is no reason to believe that the officers were lying. The trial court's finding on this score will be treated as final.

Hanson now claims that the Oregon officers who took him from Seattle to Portland, two of whom were apparently long-time acquaintances of his, gave him no warnings and deceived him by keeping from him the fact that he was suspected of murder. Since the record reveals that the Seattle officers had told Hanson he was wanted in connection with a homicide, we deem it immaterial whether the Oregon officers told him again why he was arrested.

The Oregon officers testified that they did not interrogate Hanson at all on the way to Portland. According to their testimony, which the trial court had a right to believe, Hanson started the conversation by telling the officers "about his drinking" and "that he blacked out a lot." In the ensuing conversation, Hanson volunteered, according to one officer: " 'Here a while back,' he said 'down in Portland out on Union Avenue at Chase's' he says, 'I was drinking with a girl out there called Sharon or Sherry or something like that.' And he said 'I blacked out that night,' and he says, 'I don't remember what happened.' " At this point, the officer swore he warned Hanson that he had no duty to talk and that anything he said could be used against him.

The trial court not only found that Hanson knew that he was a murder suspect, and knew that he did not have to talk to the officers, but the court could have found from the same evidence that no police officer made any effort to elicit any statement from Hanson. The record tends to show that everything Hanson told the officers was the product of his own garrulity. After he was advised of his right to remain silent, Hanson continued to talk to the detectives about his drinking and "blacking out."

We are satisfied that the trial court's findings on voluntariness are supported by the record and that no error was committed in receiving in evidence the admissions which Hanson made to the police. It might be noted that the admissions were merely cumulative evidence in any event. Eyewitnesses also identified Hanson and swore they saw him at Chase's bar at closing time with Sharon Griffin. His admissions to the police went no further than his own testimony and that of others which placed Hanson and the victim

in the same automobile shortly before the victim met her death.

A more troublesome question is whether the trial court committed reversible error when it received in evidence hearsay testimony. The murder victim was a cocktail waitress. While checking in her cash with the bartender at the end of a work shift more than twenty-four hours before she was last seen with the defendant, Sharon Griffin remarked that she had made $9.00 in tips. This somewhat remotely relevant remark was reported to the jury by another waitress who had been present when Sharon Griffin made the statement. (Since a full day elapsed between the discussion of the tips and the murder, the state brought in other witnesses to try to prove that during the interval the victim had not spent any of her money, so it could argue that she still had $9.00 in change when she went out with the defendant.) The testimony was properly objected to as hearsay, and could have been objected to on the ground that its relevancy was too remote to be of any probative value.

■■ The trial judge admitted the testimony, however, on the mistaken theory that the murder victim's statement had significance as a "verbal act" apart from its truth or falsity. The testimony, no matter how "trustworthy," was hearsay when employed to prove that the deceased had been in recent possession of $9.00. The state did not disclose either to the trial court or to this court what other relevant fact might be proven by the testimony. Although in a proper case a correct principle of the law of evidence allows a witness to testify that a particular statement was made in order to prove a fact other than the fact asserted in the statement (see *Hryciuk v. Robinson*, 213 Or 542, 326 P2d 424 (1958); 6 Wigmore, Evidence § 1772 (3d

ed 1940)), the principle was misapplied to the testimony in question. The only purpose the challenged testimony could have served was to cause the jury to believe that the victim was in fact carrying at least $9.00 in change when she departed on her "date" with Hanson. This was, of course, the very kind of hearsay the rule is intended to exclude.

The state wanted to use the evidence to prove that Hanson had robbed as well as murdered Sharon Ann Griffin. If robbery and murder could be proven, a verdict of guilty of first-degree murder would be required. ORS 163.010 (1). In addition to the hearsay testimony suggesting that the victim may have had $9.00 in change in her purse within some twenty-four hours of her death, the state had evidence from other witnesses that Hanson was carrying approximately the same amount of change on the day after the murder. The jury, however, apparently disbelieved all evidence pointing to robbery, for it returned a verdict of second-degree murder.

■ On the peculiar record made in this trial, we believe that the verdict effectively cured the error. Had the jury found Hanson guilty of first-degree murder, a different problem would confront this court. The hearsay evidence could have been prejudicial with reference to the state's theory of robbery-murder. See *Dunbar v. United States*, 156 US 185, 15 S Ct 325, 39 L Ed 390 (1895); *Edwards, Guardian v. Hoevet*, 185 Or 284, 200 P2d 955, 6 ALR2d 104 (1948).

While the verdict effectively exonerated Hanson of the only crime concerning which the hearsay testimony could have been considered by the jury, experienced trial lawyers know that evidence of stealing money from a girl, under any circumstances, would ordinarily tend to blacken the character of a man

charged with the girl's murder, and thus could be presumed to be prejudicial. On the whole record in the case at bar, however, the hearsay complained of could not have blackened the defendant's character in any appreciable degree. The defendant, confronted with his long criminal record, including other crimes of violence, had to know that if he took the stand, as he planned to do, his record would be an embarrassment to him. Accordingly, he took it upon himself to go into his record in detail on direct examination, and to claim that in most of the cases he had been convicted of crimes which he had not committed. He had a right to present his story to the jury, and the jury was entitled to consider it along with all the other evidence in the case. The trial went on for some three weeks, and much of the evidence dealt with sordid details of sexual behavior. By the time Hanson left the stand, it would have been virtually impossible to blacken his character. We are convinced that any technical prejudice that might have existed at the time the unfortunate hearsay was put in the record had long since been so attenuated by the other evidence in the case that it would be a sterile formality to remand this case for another trial merely because of the prosecutor's blunder in overtrying his case.

Numerous other assignments of error challenge the venue, the sufficiency of the evidence, the instructions to the jury, and the submission of the included crime of second-degree murder. We have examined each of the assignments, and are satisfied that the trial was free from prejudicial error.

Affirmed.