**William C. BURNETT, Appellant,**

v.

**Jesus HERNANDEZ and Atilano Hernandez, Appellees.**

**No. 15863.**

United States Court of Appeals Ninth Circuit.

Jan. 19, 1959.

As Amended Feb. 16, 1959.
Rehearing Denied Feb. 20, 1959.

Anderson & Franklin, Philip A. Levin, Wesley A. Franklin, Portland, Or., for appellant.

Mautz, Souther, Spaulding, Denecke & Kinsey, Bruce Spaulding, Portland, Or., for appellees.

Before FEE, CHAMBERS and HAMLEY, Circuit Judges.

PER CURIAM.

Burnett was injured when his car collided on an Oregon Highway with a truck owned by Atilano Hernandez and driven by Jesus Hernandez. Burnett sued in an Oregon state court for his damage and the case was removed to the U. S. District Court for the District of Oregon upon the ground of diversity of citizenship and the requisite amount in controversy. Jesus Hernandez counterclaimed for injuries he received in the accident. The jury denied relief to all parties.

On appeal, Burnett has only one point. He says that the court let into the evidence before the jury while Dr. Donald D. Smith, Burnett's physician, was testifying the fact of the existence of Oregon workmen's compensation benefits paid to Burnett or to his doctor for Burnett's account. The background fact was that Dr. Smith had been paid $109.25 by the state industrial commission for treating Burnett. This was all the doctor could get from the commission because of a fee schedule established unilaterally by the commission. Still Dr. Smith's total bill was $380, or apparently $270.75 above the official fee. On direct examination by plaintiff's counsel, Dr. Smith had testified his bill for services to plaintiff was $380 and that the amount was reasonable.

Then counsel for defendants edged into the commission fee with the question to the doctor on cross-examination: "That's what you actually charged, is it, Doctor?" After argument in the absence of the jury, the trial resumed and the court refused to let defense counsel ask the doctor what he "charged." (But this had already been answered without damage to plaintiff.) But the court would let, it indicated, the defendants ask what was "incurred." So counsel for defendants asked what was "incurred." The doctor responded: "It was $109.25." This latter question and answer, in this court's opinion, mark the point where the case "jumped the track."

From this point in the evidence forward, defendants (appellees) are probably correct that Burnett's counsel is the one upon whom the responsibility more properly falls for revealing the full facts of workmen's compensation.

Oregon has a statute as follows, ORS 656.324(2):

"In any third party action brought pursuant to ORS 656.002 to 656.590, the fact that the injured workman or his beneficiaries are entitled to or have received benefits under ORS 656.002 to 656.590 shall not be pleaded or admissible in evidence."

It is true that the defendants' first questions do not mention insurance or workmen's compensation, but it appears that their counsel well knew the background of forbidden territory. Yet a choice was made to go fishing in it—just a little bit. This little fishing established, if unexplained, that the doctor and Burnett were themselves poachers. There was little left for Burnett's counsel to do to remove the stigma (of what in its true setting was probably nothing) but to go ahead and edge further into the water. So Burnett's counsel brought out explicitly the fact of workmen's compensation. And then both sides were soon over their heads. (The full details we do not set forth.)

It is an exceedingly close question, but in our judgment the court permitting the question of what was incurred (this, after the colloquy in the absence of the jury) requires a reversal to give effect to the Oregon policy as expressed by the Oregon statute quoted above.

A situation developed where the court should have put a tight rein on counsel. Instead it let them go loose. Also, it was a day where very able counsel on both sides were not at their best. Rough justice might require that both sides lose, but that is impossible here.

While one may doubt that the diversion with the doctor on his fee caused Burnett to lose his whole case, particularly the negligence issues, still it well might have caused a smell with the jury which he could not remove. Even judges are not immune from the smell of cases, although they are presumed to be immune from the aroma of "insurance" and "workmen's compensation." But a jury is presumed to be affected by these words. The defense took a bad risk without much calculation. On this it loses here.

█ In reaching the result, this court has carefully considered Cary v. Burris, 169 Or. 24, 127 P.2d 126, 127; French v. Christner, 173 Or. 158, 135 P. 2d 464, 143 P.2d 674; and Goodale v. Hathaway, 149 Or. 237, 39 P.2d 678. The facts in the frame of each of the three cases vary from this case and from each other. However, this court is of the opinion that it here does what Oregon would do. And it is the obligation of this court to do what it believes Oregon would do.

Appellees suggest that if they are prohibited from developing the facts they are deprived of a constitutional right. Probably so—if the defense were deprived of all means of rebutting the doctor's testimony. But to hold that testimony could not be received as to what in the particular case the doctor received from the commission is not to deprive the appellees of all means of showing the fee of $380 was unreasonable.

Here we have a case where full use of pre-trial procedures normally should have eliminated the question concerning the charge of $380. (It is true there was a pre-trial order, but it did not get the reasonableness of the hospital and medical bills settled. And it did not clearly point up that there was an issue concerning the items of special damage.)

Judgment reversed for a new trial.