**Steve Mokrzycki, Plaintiff-Appellant, v. Olson Rug Company, etc., et al., Defendant-Appellee.**

**Gen. No. 47,812.**

First District, First Division.

November 21, 1960.

Joseph Barbera, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush and John O'Connor, Jr., of counsel) for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is a personal injury action by Steve Mokrzycki against Olson Rug Company for severe, permanent injuries sustained on August 27, 1953, while he was unloading a carload of bales of "carpet rags" from a box car at the plant of Globe Roofing Products Company which had been loaded by "Olson" at its plant in Chicago. The jury found the defendant not guilty. Plaintiff's post trial motion for new trial was denied and he appeals from the judgment entered on the verdict.

Olson manufactures carpets and rugs. One of its byproducts is "carpet rags" which it bales and sells. Globe uses carpet rags in making its roofing products. Olson loaded a box car with 51 bales of these rags and the car was delivered by the Chicago, Milwaukee, St. Paul and Pacific Railroad to the Globe plant on August 26, 1953. Other carloads had been shipped to Globe by Olson earlier in the year.

Plaintiff was helping another Globe employee named Kasznia unload the box car when injured. Kasznia operated a lift truck in the unloading process. The box car in question was immobilized for unloading at the Globe plant by blocking its wheels. The car had an inside length of 40' 6", was 9' 6" wide and 10' 9" high. The bales averaged in dimensions 30" x 48" x 72" and each weighed from 1,000 to 1,200 pounds. The small ends of the bales on which they rest when upright are flat and measure 32" x 48", while the narrow sides of the bales measure 32" x 72". The bales were held together by wires which caused their narrow sides to be somewhat rounded.

The north and south ends of the box car each contained 22 bales, arranged identically. Four bales were placed on end along the west side of each end of the car, with their wide side against the side of the car.

120

Two bales lay on their narrow sides across the top of these four bales. The remaining sixteen bales were stacked on their wide sides in four stacks of four bales each, with the stacks placed parallel to the end of the car. Seven bales were in the center of the car.

After the car was blocked and the door opened, Kasznia, using the lift truck, removed the seven bales from the center of the car. Plaintiff then helped Kasznia unload the four stacks in the south end of the car. He used a metal hook to pull the top bales off the stacks so that Kasznia could lift them with his truck and back out of the car with them. The others in the south end were unloaded without plaintiff's help.

Once the south end was unloaded, plaintiff helped Kasznia unload the four stacks in the north end of the car. After the first three stacks and the top bale of the fourth stack had been removed, Kasznia's truck took the second bale from the top of the last stack of four at the end of the car, and as he backed the truck toward the door of the car, plaintiff was holding the bale "steady." This placed him about two feet away from the upright bales on the west side of the car. When Kasznia returned to the car for the next bale, he found plaintiff lying injured on the floor. A bale on top of the vertical bales had fallen on his back.

The issues made by the pleadings were whether Olson was guilty of negligently loading the box car so as to proximately cause plaintiff's injuries, whether plaintiff was guilty of contributory negligence proximately causing his injuries, and whether the negligence of Globe was the sole proximate cause.

All the witnesses testifying on the method of loading and unloading agree that there is a certain amount of rocking of the box car when a lift truck of the weight used in the instant case is driven in and out of the box

car. This rocking and swaying of the box car increases as the bales are unloaded.

The plaintiff, Kasznia, and Pearl, Globe's plant superintendent, testified in support of the charge of negligent loading, saying they had never seen a car loaded the way the instant car was loaded, with bales placed on their narrow rounded sides on top of vertical bales. This testimony was that normally the bales are loaded in a vertical position, and if it is necessary to place bales on top of the vertical bales, they are laid flat. The plant superintendent testified that the bales on top of the vertical bales should have been fastened to the car wall so as to avoid being dislodged by the swaying of the car when being unloaded by the truck. An expert witness testified that the bale which injured plaintiff would not have fallen "if ordinary wooden wedges" had been used to secure it, and that the Olson loading was improper.

Plaintiff contends that the verdict was contrary to the manifest weight of the evidence; that the court erred in allowing defendant to show that plaintiff was receiving compensation under the Workmen's Compensation Act; that the court erred in permitting an exhibit consisting of a plastic box containing wood blocks purporting to represent the box car and the bales of "carpet rags" to be taken to the jury room by the jurors during their deliberations; that the court erred in giving certain instructions; and that remarks of defendant's counsel in his closing argument were prejudicial and resulted in plaintiff being denied a fair and impartial trial.

Amadeo, Olson's dock foreman, testified that he loaded the car and, as he stacked the bales four high on their flat sides, he put vertical bales alongside with two bales on top of them so that they were supported and would not topple over. He said the rule followed in unloading was to try to unload a car in the pattern

122

it was loaded. This would have resulted in unloading the bales on top of the vertical bales before they unloaded the last stacks of bales that were supporting them.

Experts for defendant testified that the load in a box car should be properly distributed so that it will not shift and cause a "derailment" damaging the goods; that unless there is an eighteen inch space between units, no bracing is needed; and that the car was improperly unloaded by first taking out the stacks which were supporting the bales on top of the vertical bales so as to permit the rocking of the car to dislodge one of them.

 The issues were fully and fairly presented to the jury by competent trial lawyers. The jury saw and heard the witnesses. They are the sole judges of the credibility of the witnesses and the weight to be given to the testimony of each of them. Bunton v. Illinois Cent. R. Co., 15 Ill.App.2d 311, 146 N.E.2d 205. It is the function of the jury to weigh contradictory evidence and inferences and to draw ultimate conclusions from the facts. Utmost caution should be exercised to uphold the sanctity of trial by jury. King v. Ryman, 5 Ill.App.2d 484, 125 N.E.2d 840. Our reviewing courts will not overturn a jury's verdict as contrary to the manifest weight of the evidence unless the opposite conclusion is clearly evident. Tabor v. Tazewell Service Co., 18 Ill.App.2d 593, 153 N.E.2d 98. The case law is clear that it is not the province of this court to substitute its judgment for that of the jury unless we can say the verdict is against the manifest weight of the evidence. Niman v. Pecatonica Livestock Exchange, 13 Ill.App.2d 144, 141 N.E.2d 327. Questions of fact fairly presented are deemed to have been settled by the verdict. Hocker v. O'Klock, 24 Ill.App.2d 259, 164 N.E.2d 225.

The court in passing on the question of manifest weight must take into consideration not only the verdict of the jury, but the fact that the trial judge also saw and heard the witnesses, examined the exhibits, heard arguments of counsel and then denied the motion for new trial. Read v. Friel, 327 Ill. App. 532, 64 N.E.2d 556. Allowance or refusal of a new trial based on weight of evidence is addressed to the trial court's sound discretion and his judgment will not be disturbed unless clear abuse has been shown. Slovinski v. Beasley, 316 Ill. App. 273, 45 N.E.2d 42. In United States Steel Corp. v. McCraney, 257 F.2d 457, the court said, "Appellant was entitled to assume that reasonable care would be exercised by the consignee and his servants and agents in unloading the car, and, as matter of law, defendant could not have foreseen that the loading, which had no hidden or latent defects and which had fully served its purpose to keep the load in place and bring it without injury to its destination, could be a cause of harm to the employees of the unloader." In Fisher v. Minneapolis & St. L. Ry. Co., 199 F.2d 308, and in Southern Ry. Co. v. Edwards, 44 F.2d 526, the facts in many respects are similar to ours. There the reviewing courts found that the injured party had been guilty of negligence as a matter of law.

In the light of these principles and factual questions raised by the direct and circumstantial evidence before the jury, we cannot hold that the verdict of the jury and the judgment of the trial court were against the manifest weight of the evidence.

The plaintiff next contends that defendant's exhibit, a plastic box and blocks showing in miniature the arrangement of bales in the car, should not have been received in evidence and taken to the jury room because the blocks being square misled the jury. This exhibit was used throughout the trial by both sides to illustrate the arrangement of the

124

bales and the sequence of the loading and unloading. Both attorneys made statements to the jury that the blocks in this exhibit were exactly rectangular and the bales in question were not. A good deal of evidence was introduced in the forms. of photographs and testimony concerning the exact characteristics of these bales. What exhibits may be taken by the jury on retiring to consider their verdict rests largely in the discretion of the trial court. See Ill. Rev. Stat. 1959, Chap. 110, § 67(4). In our judgment there was no abuse of discretion by the trial judge.

■■ As for further grounds for reversal plaintiff urges that the court erred in allowing defendant to show that plaintiff was receiving compensation under the Workmen's Compensation Act and Veteran's Aid. Under cross-examination Pearl, Globe's plant superintendent, was asked, over plaintiff's objection, if he or his company had any financial interest in the outcome of this litigation. He was also asked if there were a recovery in this case would his "company stand to recover thousands of dollars paid in compensation." Generally he answered that he assumed so.

Ordinarily, Workmen's Compensation has no place in a case such as this. This precise question has not previously arisen in our courts. Plaintiff cites Bennett v. Chicago City R. Co., 243 Ill. 420, 90 N. E. 735, and Dowd v. Chicago City R. Co., 153 Ill. App. 85. These cases are not in point. There are controlling factual differences between them and the instant case and the question of interest of the witness or of the witness's employer is not discussed. Several other jurisdiction have been confronted with this or analogous situations, and they have generally allowed the interest of an employer, not a party to the suit, to be introduced to show possible bias or prejudice of a witness in his employ. Thurber Corp. v. Fairchild Motor Corp., 269 F.2d 841; Majestic v. Louisville &

125

N. R. Co., 147 F.2d 621; Sprinkle v. Davis, 111 F.2d 925; Christensen v. Pittston Stevedoring Corp., 131 N.Y.S.2d 546 (App. Div.); Houfburg v. Kansas City Stock Yards Co. of Me., 283 S.W.2d 539 (Mo.), Emery v. Pacific Telephone & Telegraph Co., 43 Cal.App.2d 402, 110 P.2d 1079. We agree with this view. In Johannsen v. Peter P. Woboril, Inc., 260 Wis. 341, 51 N.W.2d 53, the court, in holding it reversible error to refuse to admit evidence of Workmen's Compensation in a similar situation, stated that the employer's interest is substantial and indisputable, and affects the credibility of the witness. While acknowledging the fear that the jury might, though they should not, take this in account in computing damages, the court stated that this possibility could not operate to extinguish the right of a party to establish possible motive, bias, or prejudice on the part of a witness. The Evidence Act provides that the interest of a witness may be shown for the purpose of affecting his credibility. Ill. Rev. Stat. 1959, Chap. 51, § 1.

Under the Workmen's Compensation Act the amount of compensation paid or to be paid by an employer to an injured person must be repaid by the employee from any recovery from a negligent third party. Ill. Rev. Stat. 1959, Chap. 48, § 138.5(b). The witness Pearl was Globe's plant superintendent called as an expert witness and not as an occurrence witness. Plaintiff introduced evidence showing that under the provisions of the Workmen's Compensation Act he received $8,000.00 at the rate of $29.00 a week for his injuries and that Globe paid one-half of that sum. After this payment, plaintiff was entitled to $640.00 per year as a pension for life together with all the necessary medical, surgical and hospital charges incurred or to be incurred as a result of the accident. Plaintiff also introduced evidence that the Veteran's Administration submitted a bill to plaintiff

126

for all of the hospitalization and medical care to the time of the trial. Plaintiff argues that the jury came to the conclusion that plaintiff was fully paid and in their confusion overlooked the question of liability. We cannot agree with this contention. The trial court properly instructed the jury on this issue, as follows:

> "The jury is instructed that the claim of plaintiff, Steve Mokrzycki, against defendant, Olson Rug Company, is separate and distinct from any claim that said plaintiff may have under the Illinois Workmen's Compensation Act against the Globe Roofing Products Co., arising out of the occurrence in question herein; and the fact that plaintiff may have received, or is receiving, benefits under the provisions of said Illinois Workmen's Compensation Act is not to be considered by you in determining whether the defendant, Olson Rug Company, is, or is not, liable to the plaintiff in the cause herein."

We therefore hold that the trial court did not err in admitting this evidence.

■■■ Plaintiff next argues that the remarks of defendant's counsel during his closing argument were prejudicial. These remarks complained of concern inferences made about matters that were in evidence. Plaintiff's counsel made no objections to the court when the argument was made. Argument of counsel is given a wide latitude and we cannot say from the record that there was an abuse of that privilege so as to warrant a new trial.

■■■ Lastly, plaintiff contends the court erred in giving the jury three of defendant's instructions. No objections to these instructions appear in the record and plaintiff's motion for a new trial merely states the court erred in giving these instructions, without setting them out or specifying the manner in which

127

■■■■■■■■

they were defective. However, we have examined these instructions and we are of the opinion all of the instructions given and taken as a series, including the instructions objected to, substantially and adequately state the law.

For the reasons stated above, the judgment is affirmed.

Affirmed.

KILEY, P. J. and MURPHY, J., concur.