Raymond **RIDGEWAY**, Individually and as next friend for Danny Ridgeway, a minor, Appellant,

v.

**NORTH STAR TERMINAL & STEVEDORING COMPANY, Appellee.**

No. 181.

Supreme Court of Alaska.

Feb. 11, 1963.

John M. Savage, of Irvine, Clark & Savage, Anchorage, for appellant.

John E. Manders, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

This is an appeal from a verdict and judgment for the defendant in a suit brought by plaintiff individually and on behalf of his son Danny, a minor, for damages resulting from the alleged negligent injury of the lad by an employee of defendant-appellee. As an affirmative defense in its amended answer, defendant pleaded that application for workmen's compensation benefits had been made and that some benefits had already been paid to Danny.

The first question presented is whether repeated questions and argument by counsel for appellee pertaining to the fact that plaintiff-appellant had made application for workmen's compensation benefits so prejudiced plaintiff's case that a new trial should be granted.

A pre-trial conference was ordered to be held on June 30, 1961. Plaintiff filed the required pre-trial memorandum, but apparently no conference was held until August 26, 1961, three days before trial. No pretrial order was prepared. In an affidavit filed in support of his motion for a new trial, counsel for plaintiff stated that at the

pre-trial conference the trial judge ruled that workmen's compensation had nothing to do with the issues and that counsel for defendant reluctantly agreed to abide by the judge's view. At the hearing on the motion for new trial the trial judge stated that he did not entirely agree with the affidavit concerning what happened at the pre-trial conference. His recollection was that he had stated that he thought the position of counsel for plaintiff was well taken and that unless he changed his mind, he would keep out anything concerning the compensation case.

After the jury had been selected the trial judge advised counsel for defendant that he did not intend to advise the jury as to this affirmative defense. During a recess, when the trial was approximately half completed, counsel for defendant approached the judge alone in chambers and obtained permission to ask the witness Danny Ridgeway a question concerning workmen's compensation. Upon learning of this, counsel for plaintiff then contacted the judge during the same recess and objected. He was advised by the judge that the question would be permitted because it pertained to an affirmative defense, but that if counsel for plaintiff objected, he would be sustained.

The witness was then asked if he had elected to receive workmen's compensation benefits and replied in the affirmative. Counsel for plaintiff objected. The following then transpired.

"THE COURT: Having going [sic] into it this far I want to finish the matter out. Now, probably, by stipulation counsel can agree that the application is still pending. Will you so agree— both of you.

"MR. CLARK: Yes, sir.

"THE COURT: And will you tell the Jury, how much, if any, has been received by way of Workman's Compensation?

"MR. CLARK: I really don't know. I think it's about $300.00, isn't it, John?

"MR. MANDERS: $380.00."

The judge then delivered a long explanation to the jury on workmen's compensation coverage, explaining that anything concerning compensation was strictly immaterial to the case, that he had only gone into the matter to the extent that he had because, "having going [sic] as far as we did without any objection to the question, the Jury should have the facts so that you will know what was done." The judge then specifically overruled the defense based on workmen's compensation, stated that there had been no election, and that plaintiff was entitled to proceed with the action. The jury was not specifically instructed to disregard the testimony.

On at least two occasions during the remainder of the trial the subject of workmen's compensation was brought up by questions posed by counsel for defendant and objection made by counsel for plaintiff. During closing argument to the jury, counsel for defendant again brought the matter up by arguing:

"Now, I'm in a peculiar position here— very peculiar, because the Court has originally instructed in regard to the matter of compensation, I have to bring it up."

Over objection, counsel was permitted to argue the evidence and in doing so insisted that the doctor bills had been paid. This was immediately disputed by counsel for plaintiff. The court then took over and stated to the jury that the point was immaterial to the issues before them, but that if the doctor bills had not been paid, and if the Alaska Workmen's Compensation Board found that the boy was injured in the scope of his employment, the bills would be paid. At the close of the trial the judge again orally instructed the jury at some length on the mechanics of the operation of the Alaska Workmen's Compensation Act and stated that he had intended to overrule the defense raising workmen's compensation, but had not mentioned it when summarizing the pleadings at the beginning of the trial.

A study of the lengthy instruction leads us to the conclusion that the jury may very

well have interpreted the judge's remarks as being assurance that since Danny was concededly injured on the job, his doctor bills would be taken care of and that his compensation for loss of wages would be determined by the board and was of no concern of the jury in the case before them. The jury was not specifically instructed to disregard all of the testimony at this point.

■ The general rule is that it is improper to bring before the jury information regarding the injured plaintiff's right to workmen's compensation benefits. To do so is generally held to be reversible error, requiring a new trial.

■ The rule is based on the principle that a tort-feasor is not entitled to have his liability reduced merely because plaintiff was fortunate enough to have received compensation for his injuries or expenses from a collateral source,[1] and on the assumption that knowledge of that fact will more likely than not influence the jury against the plaintiff on the issues of liability and damages.[2]

The trial judge appears to have recognized the general rule at the pre-trial conference and again when summarizing the pleadings to the jury at the commencement of the trial. A written pre-trial order would have settled the matter. Counsel for defendant was definitely advised at the beginning of the trial that the jury was not to be advised on the affirmative defense based on workmen's compensation. For some reason not apparent from the record the judge appears to have changed or relaxed his views during the course of the trial when he decided to permit counsel for defendant to ask a question pertaining to workmen's compensation coverage, sub-

ject to objection by counsel for plaintiff. The judge stated that his ruling was based on the fact that defendant had pleaded workmen's compensation in an affirmative defense even though he had twice previously ruled that the defense was not available to defendant. From this point onward the judge's control over the situation seems to have relaxed to the point of no control. Counsel for defendant was even permitted to argue the inadmissible evidence to the jury although the judge by that time had unequivocally overruled the defense in one of his explanations to the jury.

■ The trial judge should have given a definite ruling on the defense before trial, preferably in writing after the pre-trial conference. He should then have adhered to the ruling himself and required strict compliance by counsel. Deliberate breach of the rule by counsel would be grounds for disciplinary action by the court and imposition of costs in the event of mistrial. Failure to unequivocally announce and enforce the rule in this case requires reversal and a new trial at considerable additional cost to the state.[3]

It is next alleged that the trial court erred in instructing the jury on contributory negligence when no evidence had been adduced during the trial which would warrant giving the instruction.

Danny was employed by an Anchorage food market. Late in the afternoon of the day of his injury he was ordered by his employer to drive a truck to defendant's warehouse and pick up a number of cases of canned goods. According to Danny's testimony he arrived at the warehouse about fifteen minutes before closing time. He had made five previous trips to the ware-

1. Denco Bus Lines, Inc. v. Hargis, 204 Okl. 339, 229 P.2d 560, 564 (1951).

2. Burnett v. Hernandez, 263 F.2d 212 (9th Cir., 1959) applying the law of Oregon; Altenbaumer v. Lion Oil Co., 186 F.2d 35 (5th Cir., 1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951), applying the law of Texas; see also Annot., 77 A.L.R.2d 1154, (1961).

3. See Burnett v. Hernandez, 263 F.2d 212 (9th Cir., 1959), where the first breach resulted in a similar rapid deterioration of the effectiveness of the rule, resulting in reversal.

house that day. The warehouse manager was preparing to close for the day and was quite disgruntled at having to service the truck so near to quitting time. The pair began to load the truck in their accustomed manner with the manager passing or pitching the cases of goods from a forklift truck on the warehouse platform down to Danny who stood in the truck to receive and stack them. However, because of his anger on this occasion the warehouse manager kicked three cases of goods off the forklift at once. Danny was engaged in stacking at that moment. The cases fell onto the truck bed narrowly missing him. Danny warned the warehouse manager who was still swearing over having to work at that late hour. The manager then passed two or three cases in the accustomed manner. Danny testified that he heard a "thunk" as he was leaning over stacking a case and a split second later a case of goods hit him in the middle of the back, causing the injuries complained of. The warehouse manager denied kicking any cases off the forklift into the truck on direct examination but admitted on cross-examination that he may have thrown a box which struck Danny in the back.

The defendant had pleaded contributory negligence as an affirmative defense. A full and complete instruction on the defense was given by the court. Exception to the instruction was taken by counsel for plaintiff. At the time exception was taken the trial judge stated that admittedly there was no direct evidence of contributory negligence, but that defendant had pleaded it and the jury might properly infer that Danny had been contributorily negligent. During the hearing on plaintiff's motion for a new trial the judge commented that the instruction was warranted in that the jury could have found that Danny was contributorily negligent in continuing to work under the circumstances, knowing that the warehouse manager was mad at him and actually trying to hurt him.

We are of the view that it was error to give the instruction. The defendant had the burden of proving its defense of contributory negligence by a preponderance of the evidence. It introduced no evidence whatsoever in support of the defense. The boy's own testimony only proved that he was exercising his employer's contractual right to remove goods from defendant's warehouse; that defendant's agent intentionally kicked several cases of goods off the forklift which narrowly missed Danny; that he was warned not to do this again because of the danger but that he did do it again, causing serious injury. This testimony did not raise a question of contributory negligence for the jury. The lad had every right to assume that after he had warned the manager of the danger involved the incident would not be deliberately repeated. The natural tendency of a youth of sixteen would be to trust that an adult in the responsible position of defendant's warehouse manager would not continue the dangerous practice even though he may have been angered. His duty was to service his employer's customers. No unreasonable demands had been made on him. Danny obviously assumed, and had every right to assume, that he could continue the loading operation free from the intentional infliction of bodily harm. The contributory negligence of the plaintiff even if there had been a question of such in this case, is not a defense to a tort intentionally committed.[4]

Our concurring colleague feels that we have injected the issue of intentional tort into the case on appeal. We have not intended to do so. The trial judge stated that there was in his opinion enough evidence of an intention to commit a tort to warrant giving the instruction on contributory negligence. We hold that even if there was such evidence, contributory negligence would not be a valid defense.

The judgment is reversed and the case is remanded for a new trial.

4. Restatement, Torts § 481 (1934); cf. McLemore v. Harris, Opinion No. 102, 374 P.2d 410 (Alaska 1962).

AREND, Justice (concurring).

I concur in the result reached in this case, but I am of the opinion that this court has no right to inject into the case the issue of intentional tort.[1] The plaintiff did not plead an intentional tort, on the part of the defendant's agent, but only ordinary negligence. Nor was the case tried on the issue of intentional tort, either by express or implied consent of the parties.[2]

If there had been any consent, express or implied, to try this case on the issue of intentional wrong or wanton negligence, it should be apparent somewhere in the instructions to the jury. I have searched those instructions at length and fail to find therein reference to any theory of tort or negligence other than that of ordinary negligence. The case was submitted to the jury solely on the issues of ordinary negligence and the defense of contributory negligence.

It may be that the defendant did not sustain his burden of proving contributory negligence and therefore an instruction on contributory negligence should not have been given. However, I do believe that the majority are wrong in saying that the instruction should not have been given because they find that the defendant's agent was guilty of an aggravated kind of tort which was greater than ordinary negligence and to which contributory negligence cannot be pleaded as a defense. Even on the motion for a new trial, the plaintiff clung to his theory of ordinary negligence.

It is a rule of law that where a party relies in the trial court on a certain ground or theory of action or defense he is bound thereby and will not be allowed in the appellate court to assume or adopt any position or attitude which is inconsistent therewith, or to shift, change, or abandon his theory or contentions;[3] and the appellate court may not on its own motion create new issues.[4] Thus it has been held, and I believe rightly so, that the ground of liability cannot be shifted on appeal or review from that of ordinary negligence to that of reckless or wanton negligence, nor from wanton to ordinary negligence.[5]

1. The majority refer to the conduct of the defendant's agent, which is claimed by the plaintiff to have caused his son Danny's injury, as "intentional negligence." Unless the majority mean by "intentional negligence" wanton negligence, their use of the term is inept, for there is a distinction between intent and negligence. See Prosser, Torts § 8, at 30, § 30, at 120 (2d ed. 1955). There was no direct evidence in the record that the agent intended to injure Danny, though a trier of the facts might have inferred such intent from other evidence if intentional wrong had been made an issue in the case.

2. Civ.R. 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." However, Professor Moore points out that "it cannot be fairly said that there is any implied consent to try an issue where the parties do not squarely recognize it as an issue in the trial." See 3 Moore, Federal Practice, para. 15.13, at 847 (2d ed. 1948).

3. Edwards v. Hoevet, 185 Or. 284, 200 P. 2d 955, 960–961, 6 A.L.R.2d 104 (1948).

4. See Johnson v. Glassley, 118 Ind.App. 704, 83 N.E.2d 488, 490 (1949).

5. Santa Maria v. Trotto, 297 Mass. 442, 9 N.E.2d 540, 111 A.L.R. 1253 (1937); Consentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 550 (1950).